Frances V. DeGideo, Petitioner v. Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued March 6, 1981, before Judges BLATT, CRAIG and WILLIAMS, JR., sitting as a panel of three.

*Richard M. Connelly,* with him *John L. Walder,* for petitioner.

*William J. Kennedy,* Assistant Attorney General, with him *John T. Kupchinsky,* Assistant Attorney General, *Richard Wagner,* Chief Counsel, and *Harvey Bartle, III,* Attorney General, for respondent.

OPINION BY JUDGE BLATT, August 14, 1981:

The claimant[1] filed for unemployment compensation on February 11, 1979 and shortly thereafter received a Notice of Financial Determination dated February 22, 1979 which informed her that she was eligible for maximum benefits of $3,390 at a weekly rate of $113. She repeatedly informed the Office of Employment Security (Office) that, in determining her maximum benefits, it had incorrectly credited her with substantially higher wages than she had in fact received from one of her former employers.[2] Nonetheless, she continued to receive benefits at the $113 weekly rate until a revised Notice of Determination was issued on August 14, 1979, in which her calculated benefits were revised downward to maximum benefits of $2,070 at a weekly rate of $69. By August 4, 1979, the last day on which the claimant received a compensation payment, she had, as a result of having been paid at the incorrect higher weekly rate, been the recipient of an overpayment of $1,056.

---

[1] Frances V. DeGideo.

[2] The claimant advised the Bureau on several occasions that they had incorrectly credited her with wages of $2,080 for her three weeks of employment with one employer, an amount which far exceeded her actual earnings.

Her benefits were therefore discontinued nine weeks prior to the expiration of her thirty-week benefit period. She appealed to the Board.[3]

Following a hearing on September 20, 1979, the referee found that the additional $1,056 paid to the claimant constituted a non-fault overpayment pursuant to Section 804(b) of the Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §874 (b). Following a second hearing on October 26, 1979, the referee determined that, inasmuch as the claimant had received her total financial settlement of $2,070 as of July 7, 1979, her maximum benefits were then exhausted and her claim for benefits for the remaining nine weeks of the original benefit period was, therefore, invalid under Section 401(c) of the Law, 43 P.S. §801(c).[4] The Board affirmed the referee and this appeal followed.

The claimant asserts that at the time her benefits were terminated she was otherwise eligible for nine more weeks of benefits and contends that, because of her good faith efforts to inform the Office of their error in determining her maximum benefit rate, she should not be penalized by being denied the full thirty weeks of benefits. She relies on the Social Security Act mandate that the administration of state unemployment laws must be "reasonably calculated to insure full payment of unemployment compensation

---

[3] Unemployment Compensation Board of Review.

[4] Section 401 provides that:

Compensation shall be payable to any employe who is or becomes unemployed, and who—

. . . .

(c) Has made a valid application for benefits with respect to the benefit year for which compensation is claimed and has made a claim for compensation in the proper manner and on the form prescribed by the department. . . .

when due," 42 U.S.C. §503(a)(1), as discussed in *Unemployment Compensation Board of Review v. Selby,* 25 Pa. Commonwealth Ct. 273, 278, 360 A.2d 254, 257 (1976), where we said that, "[t]he Social Security Act provisions that unemployment compensation be paid in full when due, therefore, have emphasized the importance of timely payment of benefits rather than the amount of benefits to be paid." The discussion in *Selby,* however, centered upon the question of recoupment provisions which reduce the amount of subsequent benefits as not necessarily contravening federal purposes if they do not delay receipt of those benefits. Neither Section 503(a)(1) of the Social Security Act nor *Selby* stood for the proposition that, once the Office has miscalculated maximum benefits and, consequently, the weekly payment breakdown, it is forever committed to pay the claimant the erroneously arrived at benefits after the error has been rectified and the amount of the claimant's entitlement has been exhausted.

The claimant alternatively contends that, pursuant to Section 804(b) of the Act, 43 P.S. §874(b), the overpayment of benefits is only recoupable at the rate of one-third of her maximum benefits or one-third of her weekly benefit amount rather than by the arbitrary termination of all benefits prior to the expiration of her thirty-week entitlement.

Section 804(b)(1) provides in pertinent part that:

Any person who other than by reason of his fault *has received* with respect to a benefit year any sum as compensation under the act to which he was *not entitled* shall not be liable to repay such sum but shall be liable to have such sum deducted from any future compensation payable to him with respect to such benefit year, or the three-year period immediately fol-

lowing such benefit year: Provided, That with respect to overpayments of one hundred dollars or more, recoupment from such future compensation shall not exceed one-third of the maximum benefit amount to which such person is entitled during any such subsequent benefit year nor one-third of the weekly benefit amount to which such person may be entitled for any particular week. In the absence of misrepresentation or non-disclosure of a material fact, no recoupment shall be had if such overpayment is created by reason of . . . (iii) a subsequent determination that the person's base year wages were not earned in employment as defined in this act. (Emphasis added.)

Section 804(b), however, applies to any person who through no fault of his own *has already received* unemployment compensation to which he was not entitled; it does not address those who *will* receive, nor could it, for it is remedial in nature, providing a means whereby funds *already paid out* in error by the Office may be recouped in whole or in part without working an injustice upon the claimant who through no fault of his own has received benefits to which he was not entitled. The claimant, having sought to correct the Office's initial miscalculation, now complains of the consequences of the Office's rectification of its error. In previous cases in which we have dealt with the matter of recoupment in situations where, because of local error, the claimant received compensation for weeks in which he was ultimately determined to have been ineligible for benefits, the amount at issue was the amount that the claimant *had already* been paid up until the time of the ultimate determination. *Pleskovic v. Unemployment Compensation Board of Review,* 47 Pa. Commonwealth Ct. 352, 408 A.2d 190 (1979); *Department*

*of Labor & Industry, Bureau of Employment Security v. Unemployment Compensation Board of Review,* 41 Pa. Commonwealth Ct. 104, 398 A.2d 747 (1979); *Cardenas v. Unemployment Compensation Board of Review,* 36 Pa. Commonwealth Ct. 543, 388 A.2d 765 (1978). In the above-cited cases, upon a determination that the Office had incorrectly designated as eligible claimants who were ineligible to receive benefits, benefit payments ceased and the question of recoupment then arose with regard to the overpayments which had already been made.

In the instant case, the claimant was ultimately determined, upon correction of the Office's error, to be eligible for maximum benefits of $2,070. By definition, the claimant was then ineligible to receive benefits in excess of that amount, and, therefore, once she had received $2,070 in benefits, further payments to her must also cease. The Office's slowness in correcting its own error coupled with the claimant's lack of fault in a situation where there was a subsequent determination that the claimant's base year wages were not earned in employment, Section 804(b)(1), 43 P.S. §874(b)(1), combined to result in a nonrecoupable overpayment of $1,056. The Office's lack of promptness and efficiency, while not commendable, does not entitle the claimant to the further windfall she seeks. Her "entitlement" was to $2,070, which she has received and, in receiving that amount, she has received more than half that much again as a nonrecoupable overpayment.

The claimant argues that notwithstanding the fact of nonrecoupment, the loss of nine weeks income which she sustained by the arbitrary termination of anticipated benefits was a more severe economic consequence than that of recoupment through deduction of one-third of the steady, reliable weekly benefit amount. She contends that she had relied on the

prospective income to pay bills incurred in reliance on thirty weeks of payments. This argument must fail inasmuch as the claimant *knew* of the error, and, having notified the Office of its existence, certainly realized that her compensation benefits would ultimately be adjusted accordingly. Furthermore, as a result of her lack of fault and the Office's dilatory behavior in correcting its error, the claimant already stands in the enviable position of being, pursuant to Section 804(b)(1), the recipient of a $1,056 nonrecoubable overpayment.

For the above stated reasons, the order of the Board is, therefore, affirmed.

### ORDER

AND Now, this 14th day of August, 1981, the order of the Unemployment Compensation Board of Review in the above-captioned matter is affirmed.

Judge WILKINSON, JR. did not participate in the decision in this case.

